■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN M. DESMOND, Appellant. [988 NYS2d 703]—

Garry, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered July 3, 2012, upon a verdict convicting defendant of the crime of criminal sexual act in the first degree (two counts).

Defendant was charged by indictment with two counts of criminal sexual act in the first degree and one count of attempted rape in the first degree, stemming from allegations that he sexually assaulted the victim in the Town of Union, Broome County. Following a jury trial, defendant was convicted of the criminal sexual act charges and acquitted of the attempted rape charge. County Court thereafter sentenced defendant, as a second felony offender, to an aggregate prison term of 14 years, followed by 10 years of postrelease supervision. Defendant appeals, and we affirm.

Defendant challenges the legal sufficiency of the evidence establishing that he performed oral sex on the victim by forcible compulsion, as charged in count two of the indictment, and further that the guilty verdict as to both counts is against the weight of the evidence. Although, as defendant concedes, his legal sufficiency claim is unpreserved for our review, "we necessarily evaluate whether the evidence supports each element of the crime[ ] in the course of reviewing the contention that the verdict is contrary to the weight of the evidence" (*People v Fancher*, 116 AD3d 1084, 1085-1086 [2014]; *see People v Greenfield*, 112 AD3d 1226, 1226 [2013]). Here, to support the convictions, the People were required to prove that defendant engaged in two acts of sexual conduct with the victim "[b]y forcible compulsion" (Penal Law § 130.50 [1]; *see* Penal Law § 130.00 [2] [a]; [8]; *People v Din*, 110 AD3d 1246, 1246 [2013], *lv denied* 22 NY3d 1137 [2014]).

Although numerous witnesses testified at trial, the verdict rested largely on the jury's assessment of the victim's credibility. The victim testified that, on the evening of July 29, 2011, she and her friend, Andrea Hertzog, were consuming alcohol at a bar in Broome County, when they met—for the first time—defendant and his friend, Shawn Travis. After the victim was involved in an altercation with another female at the bar, the foursome proceeded to a second bar, where they consumed more alcohol, and they then decided to go swimming at a nearby creek. Upon arriving, Hertzog and Travis went off together, and defendant offered to walk with the victim down to the creek. The victim testified that, as she and defendant were walking, he pushed her up against the flood wall, "pinning her," placed his hand over her mouth to stifle her calls for help, and told her that she was going to engage in various sexual acts with him. After asking the victim if she was "done struggling," he took his penis out of his pants and put it in her mouth, warning that "if [she] bit him, he would punch [her] in the face." The victim turned her head, gagging. Defendant then unbuckled the victim's belt and proceeded to put his mouth "onto [her] vagina." The victim began to hit defendant as he was performing oral sex on her. Defendant "jumped up" and punched her in the face, thereby enabling her to break free and run away.

Hertzog and Travis each testified that they heard the victim scream and then observed her running towards them. According to these two witnesses, the victim was visibly distraught and "covered" in blood. In her testimony the victim indicated that she put her shorts back on in front of Hertzog; however,

Hertzog testified that, when the victim reached her, she was already wearing her shorts. Defendant was able to bring to light additional aspects of the victim's account that were inconsistent with the testimony of other witnesses, and the victim acknowledged that, when she gave her initial statement to the police, she withheld certain details because she was scared and uncomfortable with the male police officer who was taking her statement. The jury also had before it the videotaped interview of defendant, in which he gave conflicting accounts of what occurred, initially denying any sexual contact with the victim and ultimately admitting that he performed oral sex on the victim and that she performed oral sex on him, but maintaining that it was consensual.

Such inconsistencies and the conflicting testimony—which were fully explored by defendant on cross-examination—created issues of credibility for the jury to resolve (see People v Fernandez, 106 AD3d 1281, 1282-1283 [2013]; People v Simonetta, 94 AD3d 1242, 1244 [2012], lv denied 19 NY3d 1029 [2012]; People v Shofkom, 63 AD3d 1286, 1287 [2009], lv denied 13 NY3d 799 [2009], appeal dismissed 13 NY3d 933 [2010]). " 'Great deference is accorded to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor' " (People v Romero, 7 NY3d 633, 644 [2006], quoting People v Bleakley, 69 NY2d 490, 495 [1987]). Although we find that a different verdict would not have been unreasonable (see People v Bleakley, 69 NY2d at 495), upon deferring to the jury's credibility determinations and examining and weighing the conflicting proof in the record, we conclude that the verdict on both counts was supported by the weight of the credible evidence (see People v Miller, 112 AD3d 1061, 1063 [2013]; People v Din, 110 AD3d at 1247-1248; People v Lapi, 105 AD3d 1084, 1086 [2013], lv denied 21 NY3d 1043 [2013]).

We disagree with defendant's next contention that County Court erred in denying his request for a Dunaway hearing. A motion seeking suppression of evidence "must state the ground or grounds of the motion and must contain sworn allegations of fact . . . supporting such grounds" (CPL 710.60 [1]). " 'Hearings are not automatic or generally available for the asking by boilerplate allegations' " (People v Bryant, 8 NY3d 530, 533 [2007], quoting People v Mendoza, 82 NY2d 415, 422 [1993]; see People v Burton, 6 NY3d 584, 587 [2006]). In his omnibus motion, defendant sought "a hearing to address the possible grounds for suppression set forth under [CPL 60.45]" but, as he acknowledges in his brief, failed to set forth any sworn allega-

tions of fact supporting this request. Accordingly, County Court was permitted to deny the request for a *Dunaway* hearing (*see People v Carota*, 93 AD3d 1072, 1076 [2012]; *People v Gilmore*, 72 AD3d 1191, 1192 [2010]; *People v Jenkins*, 64 AD3d 993, 994 [2009]; *compare People v Bryant*, 8 NY3d at 534), and we conclude that the denial was not an abuse of discretion.[1]

While defendant argues that County Court erred in permitting the People to impeach their own witnesses by questioning those witnesses about any prior criminal convictions, defendant never objected to that line of questioning, thus rendering this issue unpreserved for our review (*see* CPL 470.05). In any event, there is no indication in the record that the People made the foregoing inquiries to discredit their own witnesses; rather, the testimony was elicited "to mitigate the damaging effect this information would have had if elicited on cross-examination" (*People v Johnson*, 91 AD3d 1121, 1123 [2012], *lv denied* 18 NY3d 959 [2012]; *see* CPL 60.40; *People v Wiltshire*, 96 AD3d 1227, 1230 [2012], *lv denied* 22 NY3d 1204 [2014]; *compare People v Nunez*, 82 AD3d 1128, 1129-1130 [2011], *lv denied* 16 NY3d 898 [2011]).

Similarly unpreserved is defendant's contention that County Court erred in permitting the victim to testify without a proper foundation concerning a "bite mark on [her] leg" that she sustained during the sexual assault. Defendant voiced only a general objection in response to that testimony (*see People v Romero*, 7 NY3d at 912; *People v Tonge*, 93 NY2d 838, 839-840 [1999]; *People v Heesh*, 94 AD3d 1159, 1163 [2012], *lv denied* 19 NY3d 961 [2012]) and, moreover, on cross-examination, he elicited testimony from the victim establishing that she observed that "[t]here were teeth marks in" the bite mark (*see People v Carroll*, 300 AD2d 911, 915-916 [2002], *lv denied* 99 NY2d 626 [2003]). In any event, we do not agree with defendant that the victim's testimony pertaining to the alleged bite mark consti-

---

1. In a related challenge, defendant asserts that the manner in which defendant was read his *Miranda* rights during the video-recorded interview—namely, that the investigator presented the rights in an "off-handed and dismissive manner"—supports the conclusion that he did not knowingly, voluntarily and intelligently waive those rights (*see generally People v Williams*, 62 NY2d 285, 288-289 [1984]). Based upon our independent review of the record, we agree with County Court that defendant was properly and adequately informed of his *Miranda* rights and that he knowingly, voluntarily and intelligently waived those rights (*see People v Wolfe*, 103 AD3d 1031, 1035 n 1 [2013], *lv denied* 21 NY3d 1021 [2013]; *People v Jaeger*, 96 AD3d 1172, 1173-1174 [2012], *lv denied* 19 NY3d 997 [2012]; *People v Peters*, 49 AD3d 957, 959 [2008], *lv denied* 10 NY3d 938 [2008]).

tuted improper opinion testimony by a lay witness (*see People v Dax*, 233 AD2d 177, 178 [1996]).[2]

Defendant further contends that County Court should have provided the jury with a corroboration charge (*see* CPL 60.50; CJI2d[NY] Corroboration of a Confession; *see also People v Daniels*, 37 NY2d 624, 629 [1975]). Defendant did make an initial request for a "[s]tatement corroboration charge." County Court replied that, although the victim's testimony provided the necessary corroboration, the court would permit defendant an opportunity to locate such a charge during the lunch break and revisit the issue. Defendant thereafter failed to raise the issue again and, at the conclusion of the charging conference, affirmatively indicated that there were no outstanding charging requests that the court needed to address. Based on those facts, we find that this contention is unpreserved for our review (*see* CPL 470.05 [2]; *People v Morin*, 192 AD2d 791, 792 [1993], *lv denied* 81 NY2d 1077 [1993]). In any event, were this issue properly before us, we would conclude that defendant's admissions to police were adequately corroborated by the victim's testimony and other evidence (*see People v Rutledge*, 286 AD2d 962, 962 [2001], *lv denied* 97 NY2d 687 [2001]; *People v Buster*, 245 AD2d 460, 461 [1997], *lv denied* 91 NY2d 924 [1998]; *People v Maille*, 136 AD2d 829, 830 [1988]).

Defendant further contends that he was denied meaningful representation. In deciding this claim, we review " 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation' " (*People v Shuaib*, 111 AD3d 1055, 1057 [2013], quoting *People v Baldi*, 54 NY2d 137, 147 [1981]; *accord People v Oathout*, 21 NY3d 127, 128 [2013]). To prevail on this claim, defendant must " 'demonstrate the absence of strategic or other legitimate explanations' for counsel's allegedly deficient conduct" (*People v Caban*, 5 NY3d 143, 152 [2005], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]). Defendant faults trial counsel for failing to, among other things, request a negative inference instruction, object to the People's alleged impeachment of their own witnesses, and seek a pretrial ruling regarding admissibility of

---

**2.** We further reject defendant's related contention that County Court erred in failing to provide the jury with a circumstantial evidence charge. During the charging conference, defendant requested a "hybrid direct circumstantial evidence instruction," reasoning that this case is "partly" based on circumstantial evidence. Where, as here, the charges against a defendant are not supported solely by circumstantial evidence, a circumstantial evidence charge is not required (*see People v Alnutt*, 101 AD3d 1461, 1464 [2012], *lv denied* 21 NY3d 941 [2013], *cert denied* 571 US — 134 S Ct 1035 [2014]; *People v Pagan*, 97 AD3d 963, 968 [2012], *lv denied* 20 NY3d 934 [2012]).

the "bite mark" evidence. However, where, as here, trial counsel fails to make certain motions or raise issues that had "little or no chance of success," a defendant is not deprived of meaningful representation (*People v Stultz*, 2 NY3d 277, 287 [2004]; *accord People v Brock*, 107 AD3d 1025, 1029 [2013], *lv denied* 21 NY3d 1072 [2013]; *People v Bahr*, 96 AD3d 1165, 1167 [2012], *lv denied* 19 NY3d 1024 [2012]). Similarly, neither trial counsel's failure to properly request a *Dunaway* hearing (*see People v Rivera*, 71 NY2d at 709; *People v Jackson*, 48 AD3d 891, 893-894 [2008], *lv denied* 10 NY3d 841 [2008]) nor counsel's failure to preserve defendant's legal sufficiency claim rises to the level of ineffective assistance of counsel (*see People v Jones*, 101 AD3d 1241, 1242-1243 [2012], *lv denied* 21 NY3d 944 [2013]; *People v McRobbie*, 97 AD3d 970, 972 [2012], *lv denied* 20 NY3d 934 [2012]), as both motions would likely have been denied on the merits. Based on the totality of trial counsel's representation, we conclude that defendant received meaningful representation (*see People v Beckingham*, 116 AD3d 1298, 1300 [2014]; *People v Hughes*, 114 AD3d 1021, 1024-1025 [2014]; *People v Shuaib*, 111 AD3d at 1057-1058).

Defendant's contentions that he was denied a fair trial based on the facts that the People, among other things, "overcharged" the alleged crimes, improperly paid "inordinate" attention to the victim's injuries, impeached their own witnesses and elicited an "apparent" in-court identification of defendant and testimony regarding the "bite mark" are all unpreserved for our review (*see People v Simmons*, 111 AD3d 975, 980 [2013], *lv denied* 22 NY3d 1203 [2014]; *People v Cade*, 110 AD3d 1238, 1241 [2013], *lv denied* 22 NY3d 1155 [2014]). Were we to review those contentions, we would find them to be lacking in merit, and that defendant received a fair trial (*see People v Mitchell*, 112 AD3d 1071, 1074 [2013], *lv denied* 22 NY3d 1140 [2014]; *People v Hughes*, 111 AD3d at 1173).

Finally, we are unpersuaded that the disparity between the sentence imposed by County Court and that originally proposed under the plea offer reflects that defendant was penalized for exercising his right to go to trial (*see People v Olson*, 110 AD3d 1373, 1377-1378 [2013]; *People v Izzo*, 104 AD3d 964, 968 [2013], *lv denied* 21 NY3d 1005 [2013]). In light of the circumstances of this case, defendant's failure to take responsibility for his actions, and his criminal history, we do not find that County Court abused its discretion or that extraordinary circumstances exist that would warrant modification in the interest of justice (*see People v Clairmont*, 75 AD3d 920, 924 [2010], *lv denied* 15 NY3d 919 [2010]).

Defendant's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Peters, P.J., Stein, Egan Jr. and Clark, JJ., concur. Ordered that the judgment is affirmed.